UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Newport News Division

MEREDITH NACHMAN,

        Plaintiff,

v.                                                  Civil No. 4:18cv62

SEAFORD TRANSFER, INC.,

        Defendant.

## OPINION & ORDER

This matter is before the Court on a partial motion to dismiss, filed by defendant Seaford Transfer, Inc. ("Seaford" or "Defendant"), pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 7. For the reasons set forth below, Defendant's motion is **GRANTED in part, and DENIED in part.**

### I. Factual and Procedural Background

Summarizing the detailed factual allegations in plaintiff Meredith Nachman's ("Plaintiff") complaint, in late September of 2015, Plaintiff's mother, acting on Plaintiff's behalf, personally delivered Plaintiff's household goods to Defendant's Yorktown Virginia "temperature controlled" storage facility for long-term storage. Compl. ¶¶ 6-9, ECF No. 1-1. Defendant was paid to: (1) unload Plaintiff's property from a U-Haul Truck; (2) place ID tags on each item; (3) perform any "wrapping" deemed necessary by Defendant; and (4) place Plaintiff's belongings into a large wooden

box/vault for long-term storage. Id. ¶¶ 10-12. Plaintiff was charged over $1,000 for the initial unloading and repacking of her goods, and she paid storage fees in excess of $200 per month. Id. ¶ 13. Plaintiff's mother signed a detailed inventory document as well as a "Non-Negotiable Storage Contract and Warehouse Receipt," ("Storage Contract") on which she elected to pay an additional rent premium for enhanced replacement coverage protection on Plaintiff's property. Id. ¶¶ 14-17.

Approximately two years later, Plaintiff contacted Defendant to obtain a quote for transportation of her property from Virginia to New York because she wanted to compare the price of various options, one of which was transporting the property herself using a rental truck. Id. ¶ 19. Sometime near the end of October 2017, Defendant provided Plaintiff a quote for the cost of shipping Plaintiff's goods, and Plaintiff agreed to hire Defendant to ship her property to New York. Id. ¶¶ 20-22. A short time thereafter, Defendant loaded Plaintiff's property onto a truck and shipped it to New York, with the delivery truck arriving in New York on November 2, 2017. Id. ¶¶ 22, 24. Upon delivery, much of Plaintiff's property was wet, had visible mold, and/or a mildew odor. Id. ¶¶ 26-29, 35. Plaintiff's complaint acknowledges Plaintiff's inability to pinpoint how or when such damage occurred without the benefit of discovery, id. ¶¶ 77-78, and she therefore advances multiple alternative factual theories, including:

2

(1) damage occurred during the multi-year storage in Virginia; (2) damage occurred in the days immediately prior to shipment to New York when the large wooden box/vault containing Plaintiff's belongings was left outside in the rain; and/or (3) damage occurred, and/or was exacerbated, while Plaintiff's wet property was being transported to New York.

After inventorying and photographing her property in New York, and documenting the damage on various claim forms, Plaintiff calculated her damages at over $56,000. Id. ¶¶ 38-41. After a claims process that spanned several months, Defendant offered Plaintiff approximately $4,250. Id. ¶¶ 42-50, 61-64. Plaintiff alleges that Defendant acted in bad faith throughout the claims process, to include intentionally providing misinformation to Defendant's insurance adjuster in an effort to bias such individual's review of Plaintiff's claim.[1] Id. ¶ 69.

Plaintiff initially filed suit in the York-Poquoson Circuit Court, alleging claims under Virginia statutory and common law, as well as a claim under the federal statute governing interstate carrier liability (the "Carmack Amendment"). ECF No. 1-1. Defendant properly removed the action to this Court and filed the motion to dismiss now pending before the Court. ECF Nos. 1, 7.

---

[1] Plaintiff further alleges that Defendant improperly denied broader mold/mildew coverage based on the terms of Defendant's own insurance policy, a policy that Plaintiff asserts has no bearing on whether she is entitled to compensation for her damaged property. Compl. ¶¶ 66-67, 69.

3

## II. Standard of Review

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), so as to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (omission in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The Supreme Court has interpreted the pleading standard set forth in Rule 8(a) as requiring that a complaint include enough facts to render a claim "plausible on its face" and thereby "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555, 570 (citations omitted). This plausibility requirement "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility" that a defendant is liable. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556).

The well-established Rule 12(b)(6) standard of review authorizes dismissal of a claim when the complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, and a district court must therefore "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in

4

favor of the plaintiff." Kensington Volunteer Fire Dep't v. Montgomery Cty., 684 F.3d 462, 467 (4th Cir. 2012) (quotation marks and citation omitted). Although the truth of the alleged facts is presumed, district courts are not bound by "legal conclusions" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). Moreover, a court does not resolve the applicability of defenses at the 12(b)(6) stage except in "the relatively rare circumstances where facts sufficient to rule" on such defenses "clearly appear on the face of the complaint." Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc) (quotation marks and citation omitted).

### III. Discussion

It is well-established that the Carmack Amendment completely preempts state law claims for damages to goods caused by an interstate carrier. 5K Logistics, Inc. v. Daily Exp., Inc., 659 F.3d 331, 335 (4th Cir. 2011). "Initially enacted in 1906 as an amendment to the Interstate Commerce Act of 1887, the Carmack Amendment creates 'a national scheme of carrier liability for goods damaged or lost during interstate shipment under a valid bill of lading.'" Id. (quoting Shao v. Link Cargo (Taiwan) Ltd., 986 F.2d 700, 704 (4th Cir. 1993)). As a "comprehensive exercise of Congress's power to regulate interstate commerce," such federal remedy "has long been interpreted to preempt state liability rules

5

pertaining to cargo carriage, either under statute or common law." Id. "In creating this uniform nationwide scheme of [federal] statutory remedies, Congress legislated with remarkable care, striking a precise balance between the rights of shippers and carriers." Id. As explained in greater detail by the Fourth Circuit in 5K Logistics, the Carmack Amendment benefits interstate carriers by relieving them of the burden of complying with varying regulations across different states, and benefits shippers both by providing favorable burden-shifting rules and by authorizing a lawsuit against either the original carrier or the delivering carrier. Id. Pursuant to the Carmack Amendment, a carrier is "liable 'for the actual loss or injury to the property' it transports." Ward v. Allied Van Lines, Inc., 231 F.3d 135, 138 (4th Cir. 2000) (emphasis added) (quoting 49 U.S.C. § 14706(a)(1) (1997)).[2]

Defendant's motion to dismiss pending before this Court relies entirely on Carmack preemption, seeking dismissal of: (1) Count One—Breach of the Storage Contract to the extent such count alleges rain damage; (2) Count Two—Breach of Duty of Good Faith; (3) Count Three—Common Law Negligence; (4) Count Four—Common Law Fraud; and (5) Count Six—Consumer Fraud. Defendant

---

[2] As the parties' briefing illustrates, another benefit for interstate carriers is that the Carmack Amendment is generally interpreted as limiting a shipper's remedy, in most circumstances, to the actual damage to the shipped goods. In contrast, state tort law and/or state statutory consumer protection laws often allow for the recovery of punitive damages or similar forms of relief designed to deter misconduct.

6

does not assert that the Carmack Amendment otherwise preempts the breach of the Storage Contract claim advanced in Count One, nor does it challenge the Carmack Amendment claim advanced in Count Five. Plaintiff largely agrees with Defendant's legal contention that the Carmack Amendment pre-empts any state law claims predicated on damage occurring <u>after</u> her property was loaded on the truck for interstate shipment, but argues that unresolved questions of fact exist as to both when the relevant damage occurred as well as when Defendant's activities shifted from those of a long-term "warehouseman" to those of an interstate carrier.

A.

Count One of the complaint includes a paragraph asserting that "one possibility" as to how Plaintiff's property was damaged is that Defendant "moved the container vault housing [Plaintiff's] goods out of the warehouse in advance of" the anticipated move to New York and that such wooden vault was left in the rain and leaked. Compl. ¶ 89. Such paragraph further alleges that Defendant engages in the practice of storing some customers' items outside its warehouse for a reduced fee. <u>Id.</u>

First, as argued by Plaintiff in opposition to dismissal, it cannot be known at this early stage in the proceedings if, <u>when</u>, or <u>for what purpose</u>, Plaintiff's vault may have been stored outside in the rain rather than inside Defendant's temperature-controlled facility. Interpreted in Plaintiff's favor, Plaintiff's pre-

7

discovery allegations are sufficient to include scenarios where her vault was stored outside far "in advance" of the shipment of her items to New York for reasons driven solely by Defendant's activities as a warehouseman, rather than as an interstate carrier.

Second, even assuming that Plaintiff's vault was left outside "over the weekend" immediately prior to Plaintiff's move to New York, it appears just as plausible that it was moved outside for Defendant's benefit as a long-term storage facility (i.e., Defendant had a new customer waiting to lease the temperature-controlled space occupied by Plaintiff's vault), as it is that it was moved outside by Defendant to facilitate interstate shipment, because when inferences are made in Plaintiff's favor, letting a vault sit in the rain for several days until employees and/or a moving truck become available appears to achieve little toward "facilitating" shipment.[3] While Defendant is clearly correct, as a matter of law, that Count One is pre-empted to the extent that it seeks to recover for damages occurring while Defendant acted as

---

[3] Additional plausible explanations likewise exist that cannot be known by a plaintiff without access to Defendant's internal policies and procedures. For example, consistent with Defendant collecting over $1,000 in fees for unpacking, labeling, repacking, and inventorying each of Plaintiff's belongings as a warehouseman when it received Plaintiff's items for long-term storage, it is surely plausible that, to avoid fraudulent customer claims under the enhanced property damage provision of the Storage Contract, Defendant had a policy to open and inspect all vaults and inventory each item before "releasing" them to the owner, regardless of whether they were personally collected by the owner or shipped directly by Defendant. It is therefore inappropriate at this early stage to assume, in Defendant's favor, that it was necessarily acting as an interstate carrier when it first moved, and/or first inspected the contents of Plaintiff's vault.

8

a carrier "arranging for" the interstate transportation of Plaintiff's belongings, 49 U.S.C. § 13102(23), such determination of fact is a matter for another day. See Bowman v. Paul Arpin Van Lines, Inc., No. 3:05cv62, 2005 WL 3590948, at *2 (W.D. Va. Dec. 30, 2005) (explaining that the meaning of "transportation" under the Carmack Amendment "includes the arrangements made for the movement of goods, as well as the movement itself").[4] Defendant's motion to dismiss ¶ 89 of the complaint is therefore denied at this time.

B.

Count Two of the complaint alleges a breach of the duty of good faith in evaluating Plaintiff's damages claim. As suggested above, it remains unclear at this time whether Plaintiff's property was damaged partially, or wholly, during long-term storage rather than when Defendant was handling such property as an interstate carrier. As argued by Plaintiff, to the extent Defendant appears to acknowledge that the breach of the Storage Contract claim alleged in Count One is not pre-empted by the Carmack Amendment, it appears to logically follow that an associated claim alleging the breach of a discretionary duty established by that same contract is likewise not pre-empted. Although Defendant appears

---

[4] Defendant accurately asserts that transportation under the Carmack Amendment is a broad concept, and includes acts taken by a carrier in preparation for transit and following transit, including, at a minimum, negotiations for carriage, loading activities, shipment activities, unloading activities, and temporary storage.

9

correct that the broad sweep of Carmack preemption extends to the subsequent processing of claims for damages occurring during any part of the interstate transportation process, <u>Rehm v. Baltimore Storage Co.</u>, 300 F. Supp. 2d 408, 413 (W.D. Va. 2004) (citing <u>Rini v. United Van Lines, Inc.</u>, 104 F.3d 502, 505-06 (1st Cir. 1997); <u>Gordon v. United Van Lines, Inc.</u>, 130 F.3d 282, 289-90 (7th Cir. 1997)), Plaintiff plausibly alleges a claim for a breach of the duty of good faith in the manner in which Defendant handled her damages claim under the <u>discrete Storage Contract</u> executed more than two years prior to any negotiations associated with hiring Defendant as an interstate carrier.[5] Defendant's motion to dismiss Count Two is therefore denied at this time.

---

[5] Accepting Plaintiff's well-pled facts as true, Defendant clearly wore two discrete "hats" over the course of the several years relevant to Plaintiff's claims, first acting as "warehouseman" under the Storage Contract executed in 2015 and later acting as an interstate carrier under a separate agreement negotiated in 2017. The existence of a separate long-term Storage Contract plainly distinguishes this case from the wealth of case law holding that short-term storage prior to, during, or after, an interstate trip is part of the transportation process, rendering state law claims for damages incurred during storage preempted by Carmack. See e.g., <u>Bowman</u>, 2005 WL 3590948, at *3; <u>Schultz v. Auld</u>, 848 F. Supp. 1497, 1503-04 (D. Idaho 1993); <u>Tayloe v. Kachina Moving & Storage, Inc.</u>, 16 F. Supp. 2d 1123, 1128 (D. Ariz. 1998); see also <u>Kalman v. Morris-North American, Inc.</u>, 531 So. 2d 394, 396 (Fla. Dist. Ct. App. 3d Dist. 1988) (finding that the "claims against the warehousemen are not preempted" by the Carmack Amendment because it was "clear that the parties entered into a new contract for storage" six months after the interstate move and that such contract was "separate and distinct from the terms of the bill of lading"); <u>Stabler v. Fla. Van Lines, Inc.</u>, No. CIV.A. 11-0103-WS-N, 2012 WL 32660, at *9 (S.D. Ala. Jan. 6, 2012) (discussing the distinction between: (1) Carmack preemption applicable to household goods packed and shipped to another state; and (2) the absence of Carmack preemption applicable to separate goods packed from <u>the same house on the same day</u> but shipped to an <u>in-state</u> storage facility as there was no evidence suggesting that the stored goods were ever intended to be transported out of state). Furthermore, Defendant fails to cite any case law suggesting that a later-in-time contract to act as an interstate carrier

C.

The thrust of Count Three of the complaint, even when such count is construed in Plaintiff's favor, alleges that Defendant was negligent in "[l]oading wet goods <u>for shipment</u>" knowing that they would "sit in an enclosed and unventilated area for many hours." Compl. ¶ 114 (emphasis added). Such loading activities, as a matter of fact and law, were unquestionably taken by Defendant as a carrier in preparation for the interstate shipment of Plaintiff's property, and Plaintiff's state law negligence claim must be dismissed as preempted to the extent it relies on such factual assertions. See <u>PNH Corp. v. Hullquist Corp.</u>, 843 F.2d 586, 590 (1st Cir. 1988) (indicating that the "broad definition of transportation" applicable to the Carmack Amendment extends to "all of a motor carrier's services incident to carriage and delivery"). That said, for the same reasons discussed in the preceding sections, Count Three is not dismissed in its entirety as Plaintiff alleges sufficient facts to plausibly state a claim asserting that Defendant acted negligently <u>as a warehouseman</u> in handling Plaintiff's effects during the years, months, weeks or days leading up to the acts taken <u>as a carrier</u> in preparation for shipment. Cf. id. at 591 (noting, in a factual scenario that differs from the instant case, that if the defendant "acted in the

---

eviscerates a long-term warehouseman's common law and state statutory duties, thus operating to give a warehouseman-turned-carrier free reign to act in bad faith and/or commit fraud with respect to the processing of claims <u>under the independent storage contract</u>.

11

capacity of a warehouseman, rather than a carrier . . . [t]he Carmack Amendment, and the Interstate Commerce Act generally, would be inapplicable" to such entity). Defendant's motion to dismiss Count Three is therefore granted in part to the extent it relies on activities taken in preparation for interstate shipment, and denied in part as to activities taken as a warehouseman.

D.

Count Four of Plaintiff's complaint suffers from an infirmity similar to Count Three, as the thrust of Count Four is that Defendant committed fraud through knowingly concealing the wet condition of Plaintiff's property and then loading such goods "onto the moving truck while wet and then transporting them." Compl. ¶ 122. Count Four is therefore dismissed to the extent it relies on loading activities because a claim for damages resulting from such activities is preempted as a matter of law. In contrast, when facts and reasonable inferences are construed in Plaintiff's favor, as they must be at the 12(b)(6) stage, Plaintiff plausibly alleges that Defendant obtained knowledge of the wet condition of Plaintiff's property as a warehouseman-bailee, and not only intentionally concealed such fact from Plaintiff, but thereafter intentionally biased a third-party adjuster who evaluated Plaintiff's damages claim <u>under the Storage Contract</u>. Such latter allegations survive dismissal, and Defendant's motion is therefore granted in part, and denied in part.

**E.**

Count Six of Plaintiff's complaint seeks relief pursuant to the Virginia Consumer Protection Act ("VCPA") with such claim predicated on multiple theories, to include false processing of claims under the Storage Contract and the inclusion of improper burden-shifting language in the Storage Contract. Defendant's motion to dismiss asserts that such claim is preempted by the Carmack Amendment, and to the extent it is not pre-empted, argues that Count Six improperly seeks "treble damages" under the VCPA when the proper remedy is, at most, disregarding the disputed burden-shifting provision contained in the written Storage Contract. ECF No. 7, at 6-7. For the reasons discussed in detail above, the Court finds that it would be premature to conclude that Carmack preemption applies in light of Plaintiff's allegations that Defendant engaged in intentional deception, fraud, and misrepresentations in processing Plaintiff's damages claims under the independent Storage Contract.[6] Because such claim survives at this early stage, so must Plaintiff's assertion to the right to treble damages under the VCPA.

---

[6] As noted in the preceding footnote, while the Carmack Amendment may not have a mechanism to dissuade <u>interstate shippers</u> from committing fraud while processing damages claims, Defendant fails at this time to demonstrate that Carmack's reach is so broad that <u>a warehouseman</u> can use Carmack to insulate itself from an otherwise valid state law claim arising out of a long-term storage contract based solely on the fact that the same business entity that acted as warehouseman acted as an interstate carrier several years later through a separate and independent carriage contract.

The Court separately finds that Plaintiff has sufficiently alleged that there is an improper burden shifting provision in the long-term Storage Contract that, at a minimum, provides additional context for Plaintiff's VCPA claim.[7] Stated differently, even assuming that the improper burden shifting language cannot, in isolation, support recovery of treble damages, because treble damages may be recoverable in conjunction with other facts/theories alleged in Count Six, the Court denies the motion to dismiss any portion of Count Six associated with such language at this early stage in the proceedings.

The Court does, however, grant the motion to dismiss Count Six to the extent that such count relies on Va. Code § 59.1-200(37), as Plaintiff improperly interprets such statutory provision as incorporating by reference a broad range of Virginia Code sections rather than a single code section that has no facial relevance to the facts of this case.[8] Although Defendant's attack on this subsection, and several other subsections, of § 59.1-200 was not fully articulated until Defendant filed its reply brief,

---

[7] Defendant's assertion that Plaintiff cannot demonstrate that Defendant applied the improper burden shifting language during the claims process relies on facts outside the complaint, to include Defendant's contention that its insurer did not require Plaintiff to prove that Defendant caused any of the damage to her property. The fact that Defendant's arguments rely on facts not presently before the Court further supports denial of the motion to dismiss Count Six. See Leichling v. Honeywell Int'l, Inc., 842 F.3d 848, 850-51 (4th Cir. 2016) ("An affirmative defense permits 12(b)(6) dismissal if the face of the complaint includes all necessary facts for the defense to prevail" (citing Goodman, 494 F.3d at 464)).

[8] Va. Code § 59.1-200(37) incorporates violations of § 8.01-40.2, which covers "Unsolicited transmission of advertising materials by facsimile."

Defendant's argument in its reply brief as to subsection (37) is a direct response to Plaintiff's improper interpretation of § 59.1-200(37) in its brief in opposition. Because Plaintiff will not be prejudiced in any way by the lack of a further opportunity to respond to Defendant's argument on subsection (37), the Court exercises its discretion to grant the motion to dismiss such portion of Count Six. Zinner v. Olenych, 108 F. Supp. 3d 369, 398 (E.D. Va. 2015). On this undeveloped record, the Court finds that it is inappropriate to exercise its discretion to reach the dispute as to any other subsections of § 59.1-200 set forth in Count Six of the complaint. The motion to dismiss Count Six is therefore granted as to Defendant's challenge to Count Six's reliance on Va. Code § 59.1-200(37), and is denied in all other respects.

## IV. Conclusion

For the reasons stated above, Defendant's partial motion to dismiss is **GRANTED in part, and DENIED in part**. ECF No. 7. In sum, while none of the individual counts are dismissed at this time, Defendant's motion is granted to the extent that Plaintiff's state law claims are predicated on damage caused by Defendant's activities <u>as an interstate carrier</u>, to include loading Plaintiff's property onto a truck in preparation for interstate shipment. All claims against Defendant as a "warehouseman," with the exception of the claim predicated on a misinterpretation of Va. Code § 59.1-200(37), survive at this time, with discovery being

15

the appropriate mechanism for investigating: (1) when and how the relevant damages were caused; and/or (2) which of Defendant's activities occurred as warehouseman (and were governed by the Storage Contract), and which activities occurred as interstate carrier (and were governed by the rules/procedures/remedies provided in the Carmack Amendment).

In light of the amount of damages at issue vis-à-vis the scope of discovery and other litigation procedures that will likely be necessary in this case, the Court **RECOMMENDS** that counsel for both parties confer in advance of the Rule 16(b) scheduling conference to determine an agreeable date for a settlement conference with a Magistrate Judge of this Court <u>as early as possible</u> in the litigation process.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/
Mark S. Davis
United States District Judge

UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
August 31, 2018